**Luis U. CARRASCO, Appellant,**

v.

**Lisa STEWART, Appellee.**

**No. 08–05–00161–CV.**

Court of Appeals of Texas,
El Paso.

Oct. 12, 2006.

---

Scott Johnson, Pecos, for appellant.

Hal Upchurch, Monahans, for appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Luis U. Carrasco appeals from a judgment entered in favor of Lisa Stewart. We affirm.

### FACTUAL SUMMARY

Stewart leased office space to Carrasco in Pecos, Texas. The parties entered into a one-year, written lease agreement with the term beginning on January 22, 2001 and ending on January 21, 2002. Carrasco, who is an attorney, drafted the lease. Under its terms, Carrasco was required to pay rent in the amount of $300 by the 22nd of each month with a five-day grace period, and $10 per day in late fees for each day the rent was late after the grace period. The lease contained an option to renew, but it did not contain a holdover provision. Carrasco did not timely pay his rent and when the lease expired on January 21, 2002, Carrasco owed $810 in late fee arrearages.

Carrasco experienced heating and cooling problems during his first year in the leased premises. The air conditioner stopped working in July of 2001, and Stewart did not respond to Carrasco's requests to have it repaired. Consequently, Carrasco hired an air conditioning company to repair the air conditioner and was billed $1,499.98. Stewart paid only $900 of the repair costs and Carrasco paid the remainder. Later in the year, Carrasco experienced problems with the heating system. When Stewart refused to take care of the problem, Carrasco paid $300 for the repairs. Given the problems he had experienced, Carrasco told Stewart at the end of the lease term that he would continue to

rent the premises at the rate of $300 per month, but he would not continue to pay late fees. According to him, Stewart agreed to rent the premises to him under these conditions on a month-to-month basis.

Stewart disagreed with Carrasco's version of their discussions and testified that she refused to enter into a new written lease until Carrasco paid the late fees. She agreed to continue leasing the property on a month-to-month basis under the same terms as the written lease, but she claimed the parties never discussed whether she would forego the late fee provision. In 2002, Carrasco sometimes paid his rent a few days after the grace period, but he subsequently paid the rent plus a portion of the accumulated late fees. In 2003, the rent was late every month and one payment was made 91 days after the grace period. As a result, Carrasco accumulated $4,390 in late fees for 2003 alone.

On September 29, 2003, Stewart made demand for unpaid rent and late fees in the amount of $4,090, and gave Carrasco written notice to vacate the premises within thirty days. Carrasco did not vacate until November 5. Stewart's attorney sent a demand letter for $5,157.90 in unpaid rent and late fees. Stewart later filed suit seeking to recover $5,457.90 in unpaid rent and late fees, prejudgment interest, and attorney's fees.

At trial, Stewart introduced evidence that Carrasco owed $5,457.90 in unpaid rent and late fees when he vacated the premises. The trial court found that:

(1) the parties agreed to hold over the lease tenancy on a month-to-month basis on the same terms and conditions as contained in the written lease agreement, and holdover lease tenancy continued until Carrasco vacated the premises on November 5, 2003 (findings of fact numbers 2 and 3);

(2) Carrasco is indebted to Stewart for the unpaid rent and late charges in the total amount of $5,457.90 from January 22, 2001 through November 5, 2003 (finding of fact number 4);

(3) Carrasco elected to repair the air conditioner and is therefore not entitled to rent reduction or damages for the period of time the air conditioner was out of service, but he is entitled to an offset in the amount of $600 for the repair of the air conditioner (finding of fact number 5);

(4) Carrasco is not entitled to an offset for the gas line repair because of a lack of persuasive evidence of time notice or presentation (finding of fact number 7);

(5) Stewart incurred reasonable and necessary attorney's fees in the amount of $4,250.00 through entry of final judgment, and Stewart is entitled to reasonable and necessary attorney's fees in the amount of $4,000.00 in the event of an appeal to the court of appeals, and an additional $2,000.00 in the event of an appeal to the Texas Supreme Court (finding of fact number 8); and

(6) Stewart is entitled to pre-judgment interest in the amount of $219.60 (finding of fact number 9).

### HOLDOVER TENANCY

Carrasco attacks the judgment by two points of error. In Point of Error One, he challenges the trial court's finding that he was a holdover tenant because the evidence established that the parties agreed to a month-to-month tenancy on the same terms except the parties agreed to no late fees. In Point of Error Two, he alternatively argues that even if he is a holdover tenant, such a tenancy is limited to one year, and therefore, he is not required to pay late fees for January 22, 2003 through November 5, 2003.

Legal and factual sufficiency of the evidence standards of review govern

appeals of non-jury trials on the merits. *IKB Industries (Nigeria) Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 445 (Tex.1997); *Serrano v. Union Planters Bank, N.A.,* 162 S.W.3d 576, 580 (Tex.App.-El Paso 2004, pet. denied). When a party appeals from a non-jury trial, it must complain of specific findings and conclusions of the trial court, because a general complaint against the trial court's judgment does not present a justiciable question. *Serrano,* 162 S.W.3d at 580; *Fiduciary Mortgage Co. v. City Nat'l Bank of Irving,* 762 S.W.2d 196, 204 (Tex.App.-Dallas 1988, writ denied). If the appellant does not challenge the trial court's findings of fact, these facts are binding upon both the party and the appellate court. *Serrano,* 162 S.W.3d at 580. Accordingly, it is incumbent for the appellant to attack the findings by appropriate legal and factual sufficiency points of error. *Id.*

Carrasco does not articulate these issues as raising a legal or factual sufficiency challenge to the court's findings of fact and his brief does not include any discussion of the applicable standards of review. His prayer appears to seek rendition of judgment that a holdover was not created and that the parties did not agree to future late fees during the month-to-month tenancy. Consequently, we will construe his points of error as raising only a "no evidence" challenge to the relevant findings.

■ A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. *Serrano,* 162 S.W.3d at 579. There are two separate "no evidence" claims. *Id.* When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." *Id.* When the party without the burden of

proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *Id.; In re Estate of Livingston,* 999 S.W.2d 874, 879 (Tex. App.-El Paso 1999, no pet.).

■ An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex.2005). We construe Carrasco's argument as falling within the fourth circumstance which necessarily precludes us from automatically disregarding contrary evidence in its legal sufficiency review. *See City of Keller,* 168 S.W.3d at 810–11 (stating that contrary evidence may not be disregarded in sufficiency reviews under the first, second, and fourth circumstances).

In conducting our review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id.* at 822. Even if evidence is undisputed, it is the province of the trier of fact to draw from it whatever inferences it wishes so long as more than one inference is possible. *Id.* at 821. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id.* We are also mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id.* at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor

of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id.* at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. *Id.* at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *Id.* The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

 Stewart had the burden at trial to persuade the trial court that the parties agreed to hold over the lease tenancy on a month-to-month basis on the same terms and conditions as the written lease agreement. A tenancy for a definite term does not require a tenant to give notice in order to terminate the tenancy because such a tenancy simply expires at the end of the contract period. *Bockelmann v. Marynick,* 788 S.W.2d 569, 571 (Tex.1990). Generally, options to renew the lease for an additional term must be exercised strictly according to the option provisions. *Hush Puppy of Longview, Inc. v. Cargill Interests, Ltd.,* 843 S.W.2d 120, 122 (Tex.App.-Texarkana 1992, no writ).

 A tenant who remains in possession of the premises after termination of the lease occupies "wrongfully" and is said to have a tenancy at sufferance. *Bockelmann,* 788 S.W.2d at 571. Under the common law holdover rule, a landlord may elect to treat a tenant holding over as either a trespasser or as a tenant holding under the terms of the original lease. *Id.* Proof of holding over after the expiration of a term fixed in the lease gives rise to the presumption that the holdover tenant continues to be bound by the covenants which were binding upon him during the term, in the absence of evidence to the contrary. *Barragan v. Munoz,* 525 S.W.2d 559, 561 (Tex.Civ.App.-El Paso 1975, no writ). The law implies an agreement on the part of the landlord that he will let and on the part of the tenant that he will hold on the same terms of the expired lease. *Id.* The holding over is normally a lease for a year binding on both parties in the absence of an express or implied agreement to the contrary. *Id.* at 561–62. A second and subsequent holdover year can be created by holding over after the expiration of the first holdover year. *Id.* at 562.

It is undisputed that Carrasco did not exercise the option to renew the lease. Thus, the original tenancy expired on January 21, 2002. Because Carrasco remained on the premises after the lease expired, a holdover tenancy was created under the common law holdover rule, and Carrasco impliedly agreed to remain under the same terms as the expired lease. Stewart disputed Carrasco's testimony that the parties agreed to no longer be bound by the late fees provision in the original lease. Further, Carrasco's testimony in that regard is directly contrary to his course of conduct which included paying a portion of the late fees assessed by Stewart in 2002 and 2003. While the holdover period is normally for one year, it is undisputed that the parties agreed that Carrasco could remain on the premises on a month-to-month basis. Thus, a month-to-month holdover tenancy was created and it did not expire until November 5, 2003 when Carrasco vacated the premises. We conclude that the trial court's findings are supported by legally sufficient evidence. We overrule Points of Error One and Two and affirm the judgment of the trial court.

BARAJAS, C.J., not participating.