NUMBER 13-09-00448-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                       

MARIA KAZERANI F/K/A MARIA CHONG,                                 Appellant,

v.

KYONG TAEK CHONG,                                                                 Appellee.
                                                                                                                                      

On appeal from the 92nd District Court
of Hidalgo County, Texas.
                                                                                                                      

MEMORANDUM OPINION
 
Before Justices Yañez, Garza, and Benavides
Memorandum Opinion by Justice Benavides
          Appellant, Maria Kazerani, appeals the trial court’s judgment that she take nothing
in the underlying motion for enforcement of a divorce decree and her claims for fraud,
breach of fiduciary duty, and requests for attorneys’ fees and costs, and the trial court’s
order that Kazerani pay the attorneys’ fees, post-judgment interest and costs of appellee,
Kyong Taek Chong. By four issues, Kazerani argues that: (1) the trial court erred by
denying her request for a jury trial on all claims other than her action for enforcement of the
property division in the divorce decree; (2) the trial court erred by construing the divorce
decree as (a) creating a contract for deed, rather than a lien on the subject property, (b)
precluding foreclosure unless Chong failed to make any payments whatsoever, and (c)
allowing Chong to forego monthly payments by paying a lump sum in partial satisfaction
of the total amount due; (3) the trial court’s findings were not supported by legally and
factually sufficient evidence; and (4) the issue of attorneys’ fees should be remanded to
(a) allow the trial court to re-examine the fee award in light of any appellate relief Kazerani
obtains and (b) require Chong to segregate recoverable from unrecoverable fees. We
affirm.
I. Background
          In this case, we determine whether a former spouse is entitled to recover half of the
proceeds of a condemnation award based on a lien created in a divorce decree. Maria
Kazerani and Kyong Taek Chong were married in 1988, and the trial court signed a final
decree of divorce (the “decree”) on January 17, 2001. The decree, including an agreed
provision of property division for the property in question, was admitted into evidence at
trial and provides in pertinent part:
8.Division of Marital Estate
The Court finds that the following is a just and right division of the
parties’ marital estate, having due regard for the rights of each party and the
children of the marriage.
 
Property to Husband
          IT IS ORDERED AND DECREED that the husband KYONG TAEK
CHONG, is awarded the following as his sole and separate property, and the
wife is divested of all right title, interest, and claim in and to that property:
 
H-1. The following real property, including but not limited to any
escrow funds, prepaid insurance, utility deposits, keys, house plans, home
security access and code, garage door opener, warranties and service
contracts, and title and closing document:
 
a.The South 15 Acres of Lot 19 La Lomita Hoit
Subdivision also known as 6 ½ Mile N. La Lomita Rd.,
McAllen, Texas.
 
MARIA CHONG [Kazerani] shall maintain a lien on the 15 acres and
the mobile home Santa Fe model trade name Clayton, serial number
CLW003195 TX subject to KYONG T. CHONG paying the sum of
$20,000.00 at a rate of $300.00 per month commencing November 15, 2000. 
In the event, KYONG TAEK CHONG fails to make payments and is in default
for more than 60 days MARIA CHONG shall be allowed to sell the South 15
Acres of Lot 19 La Lomita Hoit Subdivision and the mobile home Santa Fe
model, trade name Clayton, serial number CLW003195 TX and the proceeds
are to be divided equally between the parties. 

Following the court’s final entering of this decree, Chong made monthly payments to
Kazerani. On July 15, 2002, Chong made a large advance payment of $5,100 to Kazerani
as payment for the next seventeen months. According to Chong’s records, he continued
to make payments on a monthly basis despite being well-ahead of the payment schedule
ordered in the decree. Again, according to Chong’s records, these regular payments
stopped in September of 2004 when the balance remaining on the $20,000 lien was
$1,100. Chong made an additional payment in December of 2004, bringing the total
balance remaining to $800. Subsequently, Chong did not make another payment for
fourteen months—making the final $800 payment in cash on February 2, 2006.
          On May 4, 2006, the City of McAllen notified Chong that it was initiating
condemnation proceedings on the property that was subject to Kazerani’s lien in order to
build a park and stormwater drainage system. On or about July 24, 2006, Chong and
Kazerani met in order for Chong to confirm that the lien had been paid off entirely. The
testimony indicated that Chong had informed Kazerani of the condemnation proceeding
at least by this date. Kazerani disputed that the lien had been paid in full.
          Kazerani subsequently filed a motion to enforce the divorce decree’s property
division under Chapter 9 of the Texas Family Code, seeking to adjudicate her lien against
the property. In that motion, Kazerani contended that Chong had failed to make timely
payments in accordance with the decree, and therefore, she was entitled to recover half
of the property’s value. Kazerani also filed a petition for post-divorce division of property
unrelated to the condemnation.
          In his answer, Chong asserted counterclaims for declaratory judgment, quieting title,
and slander of title, seeking actual and punitive damages and attorneys’ fees. Thereafter,
Kazerani amended her petition to allege independent causes of action for fraud and breach
of fiduciary duty against Chong.
          Meanwhile, in the condemnation case by the City, a final judgment was signed on
November 14, 2008, in which title to the property vested in the City in exchange for
payment totaling $775,000. The court ordered that $200,000 be disbursed to Chong
immediately and that the remainder be deposited into the court’s registry pending the
outcome of Kazerani’s claims against the proceeds. 
          Except for her enforcement claim, Kazerani requested a jury trial and paid the jury
fee for the remaining causes against Chong on the eve of trial. Kazerani did not seek a
severance of her tort claims from her enforcement claim. The district court denied her
request for a jury trial and proceeded to judgment following a bench trial. In the court’s
final judgment, Kazerani was ordered to take nothing on her motion for enforcement and
her claims for fraud, breach of fiduciary duty, and attorneys’ fees and costs. The court
awarded Chong all of the condemnation proceeds, $102,480.00 in attorneys’ fees, and
$5,957.09 in expenses, post-judgment interest, and costs. At Kazerani’s request, the court
made comprehensive findings of fact and conclusions of law including interpretation of the
consent decree, the credibility of the witnesses, attorneys’ fees and the frivolity of
Kazerani’s suit. This appeal ensued. 
II. Standards of Review and Applicable Law
          “We review the trial court's denial of a jury demand for an abuse of discretion.” See
Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996) (citing State v.
Wood Oil Distrib. Inc., 751 S.W.2d 863, 865 (Tex. 1988)). In conducting an abuse of
discretion review, we examine the entire record. See Simon v. York Crane & Rigging Co.,
739 S.W.2d 793, 795 (Tex. 1987). “We only find an abuse of discretion when the trial
court's decision is arbitrary, unreasonable, and without reference to guiding principles.” 
See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).
          A trial court’s findings of fact in a bench trial “have the same force and dignity as the
jury’s verdict upon questions.” Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991); Ashcraft v. Lookadoo, 952 S.W.2d 907, 910 (Tex. App.–Dallas 1997, writ
denied) (en banc). Findings of fact are reviewable for legal and factual sufficiency of the
evidence. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). Because legal and factual
sufficiency of the evidence standards of review govern appeals of non-jury trials on the
merits, it is incumbent upon the appellant to attack the findings by appropriate legal and
factual sufficiency points of error. Carrasco v. Stewart, 224 S.W.3d 363, 366-67 (Tex.
App.–El Paso 2006, no pet.); see also Ramirez v. Calhoun County, No. 13-09-00018-CV,
2009 Tex. App. LEXIS 9798, at *11 (Tex. App.–Corpus Christi Dec. 29, 2009, no pet.)
(mem. op. "When a party appeals from a non-jury trial, it must complain of specific findings
and conclusions of the trial court, because a general complaint against the trial court's
judgment does not present a justiciable question." Carrasco, 224 S.W.3d at 367.
          The test for legal sufficiency is “[w]hether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.” City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005). An appellant challenging the legal sufficiency
of an adverse finding on which it had the burden of proof must demonstrate that the
evidence conclusively established all vital facts. Dow Chem. Co. v. Francis, 46 S.W.3d
237, 241 (Tex. 2001) (per curiam). The reviewing court considers the evidence in the light
most favorable to the judgment, crediting favorable evidence if a reasonable fact-finder
could, and disregarding contrary evidence unless a reasonable fact-finder could not. City
of Keller, 168 S.W.3d at 807.
          When reviewing a judgment for factual sufficiency, we consider all of the evidence
and will “set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.” Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); see Dow Chem. Co., 46 S.W.3d at 241 (requiring that the verdict must be “against
the great weight and preponderance of the evidence” in order to be reversed).
          We review legal conclusions de novo. BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002); Villagomez v. Rockwood Specialties, Inc., 210 S.W.3d
720, 748 (Tex. App.–Corpus Christi 2006, pet. denied). “When we conduct our de novo
review of conclusions of law, the judgment will be upheld if it can be sustained on any legal
theory supported by the evidence.” Villagomez 210 S.W.3d at 748 (citing Harlingen
Irrigation Dist. v. Caprock Commc’ns Corp., 49 S.W.3d 520, 530 (Tex. App.–Corpus Christi
2001, pet. denied). “A trial court's conclusions of law may not be reviewed for factual
sufficiency and may be reversed only if they are erroneous as a matter of law.” Villagomez,
210 S.W.3d at 748 (citing Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex.
App.–Austin 1999, pet. denied); Hofland v. Fireman's Fund Ins. Co., 907 S.W.2d 597, 599
(Tex. App.–Corpus Christi 1995, no writ)). Incorrect conclusions of law do not require
reversal, provided that the controlling findings of fact support a correct legal theory under
which the judgment would be supported. Id. (citing Stable Energy, 999 S.W.2d at 547).
III. Analysis
A.       Entitlement to Jury Trial
          By her first issue, Kazerani contends that the trial court erred by denying her request
for a jury trial on all claims other than her action for enforcement of the property division
in the divorce decree.


 We disagree.
          First, Kazerani argues that she was entitled to a jury trial on the claims she brought
against Chong for fraud and breach of fiduciary duty. The United States and Texas
Constitutions guarantee the right to trial by jury. See U.S. Const. art. III, § 2; Tex. Const.
art. I, § 15. Assuming, without deciding, that the denial of a jury trial on these claims was
an abuse of discretion by the trial court, we next determine if that abuse of discretion was
harmful. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996). An
abuse of discretion in denying a jury trial is harmless if either party would be entitled to an
instructed verdict. See Caldwell v. Barnes, 154, S.W.3d 93, 98 (Tex. 2004) (“The wrongful
denial of a jury trial is harmful when the case contains a question of material fact.”); Halsell
v. Dehoyos, 810 S.W.2d 371, 372 (Tex. 1991) (per curium) (“A refusal to grant a jury trial
is harmless error only if the record shows that no material issues of fact exist and an
instructed verdict would have been justified.”). There is no evidence in the record that
would support either of Kazerani’s independent claims, and in fact, all evidence shows that
there was no misrepresentation made to Kazerani whatsoever, and further, there is no
evidence to even establish that a fiduciary duty existed at all, much less that such a duty
was breached. There was no issue of material fact on these claims. Therefore, we find
that an instructed verdict would have been proper on both claims and that denying a jury
trial on these claims was harmless.
          Second, Kazerani argues that she was entitled to a jury trial on Chong’s
counterclaims for slander of title, quieting title and declaratory judgment. The outcome of
each of these claims is necessarily determined by the outcome of the action to enforce the
property division in the divorce decree. The elements of each of these claims are such that
if the trial court found in favor of Chong in the action to enforce the property division,
Chong would necessarily prevail in each of these claims, and if the trial court found in favor
of Kazerani, Chong would necessarily lose under each of these claims. For that reason,
it is clear to us that each of these claims, when joined with the action to enforce the
property division in the divorce decree, were cumulative of that action. Therefore, without
seeking severance, Kazerani was not entitled to a jury trial on Chong’s independent claims. 
See Tex. Fam. Code Ann. § 9.005; see also O’Neal v. Forehand, No. 13-08-457-CV, 2009
Tex. App. LEXIS 5091, at *6-7 (Tex. App.–Corpus Christi July 2, 2009, pet. denied) (mem.
op., not designated for publication) (noting that the appellant in that case, by bringing an
action to enforce a divorce decree, “showed that she was invoking the provisions of the
family code. Therefore, she was precluded from demanding a jury trial [on the
independent claims].”). For this reason, we hold that the trial court did not abuse its
discretion in denying Kazerani’s request for a jury trial. See Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985) (stating the standard for abuse of
discretion).
          For the reasons stated, we overrule Kazerani’s first issue.
  B.      The Divorce Decree
          By her second and third issues, Kazerani argues that the trial court erred by
construing the divorce decree as (1) creating a contract for deed, rather than a lien on the
subject property, (2) precluding foreclosure unless Chong failed to make any payments
whatsoever, and (3) allowing Chong to forego monthly payments by paying a lump sum in
partial satisfaction of the total amount due. By her third issue, Kazerani argues that the
trial court’s findings were not supported by legally and factually sufficient evidence.
          1.       Construction of the Divorce Decree
          By her third sub-issue in her second issue, Kazerani gets to the heart of the merits
of this case, arguing that the trial court erred in its construction of the divorce decree
because its interpretation allowed Chong to make a lump sum payment in order to get
ahead of schedule on payments, and did not require him to make continuous monthly
payments once he was ahead of the payment schedule. We review this interpretation of
the divorce decree de novo. 
          The divorce decree provides that Kazerani shall maintain a lien on the property
“subject to [Chong] paying the sum of $20,000.00 at a rate of $300.00 per month
commencing November 15, 2000. In the event [Chong] fails to make payments and is in
default for more than 60 days [Kazerani may sell the property]. . .” So long as Chong met
this obligation, having never fallen more than sixty days behind on his payments, the lien
was discharged, and the other provisions allowing foreclosure and sale of the property are
immaterial. The language is clear by its plain meaning, and therefore, we uphold the trial
court’s ruling that the divorce decree did not require continuous payments on a monthly
basis so long as sixty days had not passed since Chong was last up to date on his
payments. Assuming that Chong made a lump sum payment of $5,100 on July 15, 2002,
he was at that time seventeen payments ahead of schedule, and therefore, he was at no
time in default of his payment schedule, much less in default for the sixty-day period
required in order to enforce the lien. Being so far ahead, this is true even if, as Kazerani
argues, Chong missed some payments and had some checks returned to Kazerani for
insufficient funds.
          Because of our construction of the divorce decree, Kazerani’s first and second sub-issues in her second issue are immaterial. Whether the trial court interpreted the decree
as creating a contract for deed, rather than a lien on the subject property, is irrelevant if no
default or right to foreclosure exists. Likewise, it is irrelevant whether the decree also
precluded foreclosure unless Chong failed to make any payments whatsoever, because
under our construction of the decree, Kazerani is prevented from foreclosing on the lien
regardless. Therefore, even if we assume, arguendo, that these findings by the trial court
were error, they were harmless. For the foregoing reasons, we overrule Kazerani’s second
issue.
          2.       Legal and Factual Sufficiency of the Evidence
          By her third issue, Kazerani contends that the trial court’s findings that Chong
satisfied his obligations under the divorce decree were not supported by legally and
factually sufficient evidence. 
          The test for legal sufficiency is “[w]hether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.” City of Keller, 168
S.W.3d at 827. Kazerani must demonstrate that the evidence conclusively established all
vital facts to support her interpretation of the divorce decree. See Dow Chem. Co., 46
S.W.3d at 241. We must consider the evidence in the light most favorable to the judgment,
crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary
evidence unless a reasonable fact-finder could not. City of Keller, 168 S.W.3d at 807. 
Kazerani’s entire argument for this issue on appeal requires a construction of the divorce
decree that precludes Chong from making a lump sum payment in partial satisfaction of
the debt owed on the lien. As we have noted above, this is not the correct interpretation
of the decree, and therefore, all evidence will be evaluated under our interpretation. The
trial court saw evidence of Chong’s pay ledger, along with checks cleared through his bank. 
The trial court heard testimony from both Chong and Kazerani that Chong had initially
made monthly payments on time, that he made a lump sum payment of $5100 (which
Kazerani claims was for a separate debt), and that thereafter, he continued to make
monthly payments—with some being late or returned for insufficient funds—until $19,200
of the debt had been paid. The trial court also heard testimony that before the next
payment was due, Chong made additional cash payments in the amount of $800,
discharging the lien on the property. We consider this evidence in a light most favorable
to the judgment, and hold that a reasonable fact-finder could have reached the judgment
that the trial court reached in this case. City of Keller, 168 S.W.3d at 827. Therefore, we
hold that the evidence was legally sufficient to support the judgment. See id. 
          When reviewing a judgment for factual sufficiency, we consider all of the evidence
and will “set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.” Cain, 709 S.W.2d at 176; see Dow Chem.
Co., 46 S.W.3d at 241 (requiring that the verdict must be “against the great weight and
preponderance of the evidence” in order to be reversed).. Kazerani presented evidence
that some of the payments made by Chong did not clear his bank immediately, that the
lump sum payment of $5,100 was for a different debt, and that the lien had not been
discharged by total payment. As we have noted above, there was strong contrary evidence
on each of these points, and therefore, we cannot say that the trial court’s judgment was
against the great weight and preponderance of the evidence. Accordingly, we hold that the
evidence was factually sufficient to support the judgment, and we overrule Kazerani’s third
issue. See Cain, 709 S.W.2d at 176.
C.       Attorney’s Fees
          By her fourth issue, Kazerani argues that this Court should remand this case for a
new trial on the issue of attorneys’ fees because Chong failed to segregate fees between
the family code action and the various other claims litigated between the parties. We
review the trial court’s award of attorneys’ fees for an abuse of discretion. Dillard Dep’t
Stores, Inc. v. Gonzales, 78 S.W.3d 398, 412 (Tex. App.–El Paso 2002, pet. denied). 
          In its findings of fact 85, 86, and 87, the trial court found that Chong had $102,480
in attorneys’ fees and $5,957.09 in expenses relating to “Petitioner’s Motion for
Enforcement of Property Division,” additionally finding that “the attorneys’ fees and
expenses incurred in connection with defending [Kazerani’s] claims and in prosecuting
[Chong’s] counterclaims for attorneys’ fees, costs, and declaratory judgment are
inextricably intertwined.” Kazerani asserts that because Chong’s suits for slander of title
and his suit to quiet title could not be awarded attorney’s fees, Chong was required to
segregate the billed fees and costs associated with those claims. See Scherer v. Angell,
253 S.W.3d 777, 783 (Tex. App.–Amarillo 2007, no pet.) (noting that slander of title does
not support attorneys’ fees); Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint Venture, 981
S.W.2d 951, 957 (Tex. App.–Houston [1st Dist.] 1998, pet. denied) (holding that attorneys’
fees are not recoverable in a suit to quiet title). The trial court, however, specifically noted
that the attorneys’ fees were being awarded solely for “Petitioner’s Motion for Enforcement
of Property Division,” which are authorized under section 9.014 of the Texas Family Code. 
See Tex. Fam. Code Ann. § 9.014 (Vernon 2006). 
          The trial court heard evidence as to the attorneys’ fees, and it was within the trial
court’s discretion to determine that the entire amount of costs that were billed were for the
motion to enforce the property division, and that none of the fees were for the claims under
which attorneys’ fees were not recoverable. We can not hold that the trial court's decision
was arbitrary, unreasonable, or without reference to guiding principles, and therefore, we
find no abuse of discretion. See Downer, 701 S.W.2d at 241-42. Accordingly, we overrule
Kazerani’s fourth issue.
IV. Conclusion
          Because we have overruled all of Kazerani’s issues on appeal, we affirm the trial
court’s judgment.


                                                                               ______________________________
                                                                               GINA M. BENAVIDES,
                                                                               Justice
 

Delivered and filed the
30th day of December, 2010.